IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Geofrey S. Cook,<br><br>    Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>    Defendant. | No. CV-18-02917-PHX-DLR<br><br>**ORDER** |

At issue is the denial of Plaintiff Geofrey S. Cook's Applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") by the Social Security Administration ("SSA") under the Social Security Act ("the Act"). Plaintiff filed a Complaint (Doc. 1) seeking judicial review of that denial, and the Court now addresses Plaintiff's Opening Brief (Doc. 13, Pl. Br.), Defendant SSA Commissioner's Opposition (Doc. 17, Def. Br.), and Plaintiff's Reply (Doc. 18, Reply). The Court has reviewed the briefs and the Administrative Record (Doc. 11, 12, R.) and now affirms the Administrative Law Judge's ("ALJ") decision (R. at 17–32), as upheld by the Appeals Council (R. at 1–6).

**I.    BACKGROUND**

Plaintiff filed his Applications on August 12, 2014 for a period of disability beginning on December 15, 2009. (Pl. Br. at 1–2.) Plaintiff's claim was denied initially on March 3, 2015, and upon reconsideration on August 7, 2015. (R. at 20.) Plaintiff then

testified at a hearing held before an ALJ on May 16, 2017. (R. at 40–65.) On September 29, 2017, the ALJ denied Plaintiff's Applications. (R. at 17–32.) On July 20, 2018, the Appeals Council upheld the ALJ's decision. (R. at 1–6.)

The Court has reviewed the medical evidence in its entirety and finds it unnecessary to provide a complete summary here. The pertinent medical evidence will be discussed in addressing the issues raised by the parties. In short, upon considering the medical records and opinions, the ALJ evaluated Plaintiff's disability based on the following severe impairments: degenerative changes of the spine; residuals of remote left shoulder separation; remote history of seizures (alcohol related); and remote history of asthma. (R. at 23.)

Ultimately, the ALJ evaluated the medical evidence and testimony and concluded that Plaintiff is not disabled. (R. at 32.) The ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (R. at 26.) The ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform light, skilled work, with some exceptions. (R. at 26.) Specifically, the ALJ determined that Plaintiff can lift and carry 20 pounds occasionally and ten pounds frequently; stand or walk for six hours in an eight-hour day and sit for six hours in an eight-hour day; occasionally climb stairs and ramps but never ropes, ladders, or scaffolds; occasionally stoop, kneel, crouch, and crawl; reach overhead, with occasional limitations on the left; and should avoid concentrated exposure to fumes, odors, dust, gases, unprotected heights, and moving and dangerous machinery. (R. at 26.) Consequently, the ALJ found that Plaintiff can perform his past relevant work as a "manager recreation establishment." (R. at 31.)

## II.   LEGAL STANDARD

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based

on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, but less than a preponderance; it is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* To determine whether substantial evidence supports a decision, the court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If not, the claimant is not disabled and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. *Id.* At step four, the ALJ assesses the claimant's RFC and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If so, the claimant is not disabled and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where he determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

## III. ANALYSIS

Plaintiff raises two arguments for the Court's consideration: (1) the ALJ erred by rejecting the medical opinions of Dr. Jason Heavens, Plaintiff's treating physician, and Greg Mucklow ("Mucklow") and Jami Cline ("Cline"), Plaintiff's treating licensed mental health professionals; and (2) the ALJ erred by failing to present a complete hypothetical question to the vocational expert.[1] (Pl. Br. at 13–20.)

The ALJ did not err by rejecting the opinions of Plaintiff's treating physician and licensed mental health professionals. With regard to Plaintiff's physical limitations, the ALJ rejected Dr. Heavens's opinions because they were inconsistent with his own treatment records and the overall medical record. With regard to Plaintiff's mental limitations, the ALJ rejected the opinions of Dr. Heavens, Mucklow, and Cline because their opinions were unsupported by their respective treatment records.

While "[t]he ALJ must consider all medical opinion evidence," there is a hierarchy among the sources of medical opinions. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Those who have treated a claimant are treating physicians, those who examined but did not treat the claimant are examining physicians, and those who neither examined nor treated the claimant are nonexamining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). "The medical opinion of a claimant's treating physician is given 'controlling weight' so long as 'it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the record].'" *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 1995) (citing 20 C.F.R. § 404.1527(c)(2)).

An ALJ may only reject a treating or examining physician's contradicted medical opinion "for specific and legitimate reasons that are supported by substantial evidence in the record." *Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1164 (9th Cir. 2008). "The

---

[1] Because the Court finds that the ALJ did not err in rejecting the opinions of Plaintiff's treating physician and licensed mental health professionals, the Court does not address Plaintiff's argument that the hypothetical posed to the vocational expert was incomplete.

- 4 -

ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). "Substantial evidence means more than a mere scintilla, but less than a preponderance." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

### A. Physical Limitations

Dr. Heavens treated Plaintiff from June 2015 through April 2017. (R. at 1982.) In a Disability Impairment Questionnaire dated April 2017, Dr. Heavens listed as Plaintiff's diagnoses chronic pancreatitis, uncontrolled type two diabetes, chronic low back pain, chronic obstructive pulmonary disease, post-traumatic stress disorder ("PTSD"), traumatic brain injury, and dementia. (R. at 1982.) According to Dr. Heavens, Plaintiff's primary symptoms were chronic back and abdomen pain, fatigue, and trouble with memory and cognition. (R. at 1983.) Given these symptoms, Dr. Heavens opined that Plaintiff would be limited to sitting two hours in an eight-hour day and standing and/or walking two hours in an eight-hour day. (R. at 1984.) Additionally, Dr. Heavens opined that Plaintiff would be absent from work more than three times per month and would need unscheduled breaks. (R. at 1985–86.)

The ALJ assigned no weight to Dr. Heavens's opinions regarding Plaintiff's physical limitations for two reasons. First, the ALJ found that Dr. Heavens's assessment of Plaintiff's functional capacity was inconsistent with his own treatment records. (R. at 30.) Second, the ALJ found that Dr. Heavens's opinion conflicted with the overall record. (R. at 29–30.)

On the other hand, the ALJ assigned partial weight to the opinions of two nonexamining agency reviewers, Dr. Marilyn Orenstein and Dr. John Fahlberg, and one examining physician, Dr. Richard Palmer. (R. at 31.) All three reviewers found that Plaintiff could perform a range of medium work. (R. at 31.) Therefore, the issue is whether the ALJ's reasons for rejecting Dr. Heavens's opinions are specific and legitimate and supported by substantial evidence. The Court finds that they are.

The ALJ's first reason for rejecting Dr. Heavens's opinion—that it is inconsistent with his own treatment records—is specific and legitimate and supported by substantial evidence. Dr. Heavens treated Plaintiff for diabetes mellitus, which Plaintiff argues was not well-controlled. (Pl. Br. at 15.) To support his argument, Plaintiff points to a March 2016 treatment record in which he informed Dr. Heavens that his blood sugars were "out of control" and that he was taking 15 units of insulin per night. (Pl. Br. at 14–15). The ALJ found that Plaintiff's diabetes mellitus was non-severe and found evidence of improvement throughout the record "with [Plaintiff's] adherence to treatment regimen." (R. at 23.) Dr. Heavens's treatment records clearly indicate that Plaintiff has been living with diabetes mellitus and seeking to find a more consistent treatment plan. However, the record is devoid of evidence that the disease is severely limiting Plaintiff's ability to function.

Dr. Heavens also treated Plaintiff for chronic pain, which Dr. Heavens described as "sharp stabbing abdominal pain" and "chronic aching low back pain." (R. at 1983.) In rejecting Dr. Heavens's opinion, the ALJ noted that Plaintiff's physical exams from June 2016 through August 2016 were "unremarkable overall." (R. at 30.) Specifically, Dr. Heavens and Heavens Medical PLC repeatedly reported that Plaintiff had normal curvature of the back, no pain in his muscles or joints, no limitation of his range of motion, no tenderness in his back, and was not experiencing acute distress. (R. at 1633, 1635, 1638, 1641, 1643, 1646, 1648, 1653, 1662, 1671.) *Compare Lester*, 81 F.3d at 833 (finding claimant's treating physician's opinions credible where the physician's own records show that claimant's back pain was causing him to have difficulty walking).

The ALJ also noted instances in Dr. Heavens's treatment record that show Plaintiff "generally obtained relief with treatment." (R. at 28, 30.) Plaintiff argues that treatment for his back pain, specifically an epidural injection in February 2016, improved Plaintiff's pain by only eight percent. (Pl. Br. at 15.) However, just one month prior, Plaintiff rated his average pain as "tolerable" (R. at 1640) and later reported that nerve ablations and pain medications were helping with his pain. (R. at 1629–30.) Here, because Dr. Heavens's

opinions were unsupported by his own treatment records, the ALJ properly considered Plaintiff's improvement and positive responses to treatment.

The ALJ also found Dr. Heavens's opinions to be inconsistent with the overall record. Specifically, the ALJ pointed to an exam dated April 13, 2017 in which Plaintiff "had normal musculoskeletal and neurological exams." (R. at 30.) In response, Plaintiff argues that "despite the normal exams, the same notes document depression, low energy, [and] insulin related weight changes." (Pl. Br. at 16.) Plaintiff's argument misses the mark since it does not refute the ALJ's proffered use of that record to contradict Dr. Heavens's opinions regarding Plaintiff's physical limitations.

Moreover, there is an overwhelming amount of evidence that Plaintiff was neither compliant with treatment options nor severely limited due to his impairments. For example, in his Function Report, Plaintiff reported that he is his mother's caretaker six months per year, which involves driving her to swimming and running errands. (R. at 283.) Plaintiff also does household chores and has no issues with personal care. (R. at 285.) He goes for walks in the morning or at night and was working out six times per week as of July 23, 2015. (R. at 283, 1665–66.) Finally, a consultative examination performed by Dr. Palmer on February 14, 2015 revealed that Plaintiff can continuously sit, stand, and walk for 60 minutes, is comfortable in a seated position, and has normal range of motion of the neck, right shoulder, elbows, wrists, hands, back, hips, knees, and ankles. (R. at 31, 1450–58.) The ALJ properly considered Dr. Palmer's assessment for the same reasons that he disregarded Dr. Heavens's opinions. *See Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983).

Plaintiff has a history of non-compliance with his diabetes treatment regimen, which includes monitoring his diet and exercise. (R. at 499, 501, 510.) As of August 2016, Plaintiff was unmotivated to exercise. (R. at 1740.) Additionally, the record reflects a history of asthma, but the ALJ found evidence that Plaintiff has a long history of smoking cigarettes. (R. at 29.) Although Plaintiff indicated to Dr. Heavens that he was planning on

quitting smoking on December 23, 2015 (R. at 30, 1642), there are reports that Plaintiff was still smoking half a pack per day as of June 2016. (R. at 30, 2041.)

Lastly, the ALJ concluded that Plaintiff's history of drug seeking behavior is inconsistent with Dr. Heavens's assessment and discredits his opinions to the extent they rely on Plaintiff's subjective reports of pain. The Court agrees. "The ALJ may reject a treating physician's opinion in cases in which objective test results, reports from other physicians, testimony from the claimant, or other evidence conflicts with the opinion." *Evenhus v. Astrue*, 815 F.Supp.2d 1154, 1160 (D. Or. 2011) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751–52 (9th Cir. 1989)). "A physician's disability opinion may be disregarded if it is premised upon the claimant's subjective symptoms and limitations that were properly discredited." *Id.* (citing *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999)).

Here, the ALJ noted that "the medical record reveals a history of drug seeking behavior by the claimant" from at least 2010 through 2016—virtually the entire period for which medical evidence exists in the record. (R. at 29.) Specifically, in June 2015, a record from Banner Goldfield Medical Center indicates that Plaintiff claims he ran out of Percocet, but the Arizona Controlled Substances Prescription Monitoring Program showed that this was Plaintiff's third visit requesting Percocet and he had received 24 tablets just three days prior. (R. at 1508.) Throughout 2016, Dr. Heavens noted that he informed Plaintiff of the risks and addictive nature of pain medicine, and on June 1, 2016, Dr. Heavens noted that Plaintiff's pain management physician, Dr. David Delatte, had stopped treating Plaintiff "because of multiple outside fills of pain medications." (R. at 1748.) Plaintiff's history of drug seeking behavior is an entirely appropriate basis to conclude that Plaintiff lacks credibility in his symptom testimony. *Edlund v. Massanari*, 253 F.3d 1152, 1157 (9th Cir. 2001); *see also Anderson v. Barnhart*, 344 F.3d 809, 815 (8th Cir. 2003).

Notably, the ALJ did consider evidence that lends support to Dr. Heavens's opinions, including a November 2015 x-ray that showed "mild lumbar tilt/loss of lordosis" and "mild degenerative disease" (R. at 2108), and a December 2016 x-ray that showed

"mild thoracic spine curvature" and "mild multilevel thoracic spine spondylosis." (R. at 2009.) Further, some of Dr. Heavens's records in 2016 show objective findings of lower back pain. (R. at 1741, 1742, 1745, 1746, 1749.) However, it is the ALJ's duty to resolve conflicts in the evidence. *Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995) ("The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities."). Substantial evidence supports the ALJ's conclusion that Dr. Heavens's opinions were inconsistent with the rest of the record, and the Court must defer to the ALJ's rational interpretation of the evidence. *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

In sum, the ALJ provided clear and convincing reasons supported by substantial evidence in the record to discount Dr. Heavens's assessment of Plaintiff's physical limitations.

### B. Mental Limitations

#### 1. Dr. Heavens

Dr. Heavens completed a Mental Impairment Questionnaire in which he listed as Plaintiff's diagnoses PTSD, generalized anxiety disorder, alcohol dependence in remission, and moderate early dementia. (R. at 2102.) Dr. Heavens opined that Plaintiff has moderate to marked limitations with understanding and memory, none to marked limitations with concentration and persistence, moderate to marked limitations with social interactions, and moderate limitations with adaptation. (R. at 2105.) Dr. Heavens listed nightmares, decreased cognition, social anxiety, and panic attacks as Plaintiff's most severe or frequent symptoms. (R. at 2104.) Dr. Heavens also opined in the Disability Impairment Questionnaire that Plaintiff's symptoms and limitations would be exacerbated by Plaintiff's depression. (R. at 1986.)

The ALJ assigned no weight to Dr. Heavens's opinions regarding Plaintiff's mental limitations for two reasons. First, the ALJ found that "psychiatric issues are beyond the scope of [Dr. Heavens's] practice." (R. at 30.) Second, the ALJ found that Dr. Heavens's opinions "are decidedly internally inconsistent with his [own] treatment records." (R. at

30.) The ALJ also assigned no weight to consultative examiner, Wayne General, Ph.D. (R. at 25.) Conversely, the ALJ assigned great weight to two state agency physicians, Jaine Foster-Valdez, Ph.D., and Randall Garland, Ph.D., who found that Plaintiff's mental impairments were non-severe. (R. at 24.)

Plaintiff argues that the ALJ erred by concluding that Plaintiff's treating physician could not opine as to Plaintiff's mental state because it "is not a legally sufficient reason for discounting his opinion." (Pl. Br. at 15.) The Court agrees. The positive observations of Plaintiff's treating physician can be considered in weighing the medical evidence, even if those observations deal with an area outside of the physician's specialty. *See, e.g.*, *Lester*, 81 F.3d at 833 (noting that treating physician's opinion regarding mental state is not discounted on the grounds he is not a psychiatrist). Therefore, the ALJ's first reason for rejecting Dr. Heavens's opinions regarding Plaintiff's mental capacity is not legitimate.

Conversely, the ALJ's second reason for rejecting Dr. Heavens's opinions—that his opinions are inconsistent with his own treatment records—is specific and legitimate and supported by substantial evidence. The ALJ pointed to mental status exams dated June 2015 through August 2016 in which Dr. Heavens recorded that Plaintiff's "mood was good, affect was bright and [he] maintained normal thought content and process, judgment and intact insight." (R. at 30.) Dr. Heavens and Heavens Medical also repeatedly recorded that Plaintiff generally reported no depressive symptoms. (R. at 30, 1641, 1643, 1646, 1656, 1659, 1662, 1671, 1740, 1743, 1746–47.) Although Plaintiff suffers from chronic PTSD, many of Dr. Heavens's records indicate that medication was working well for Plaintiff, specifically that it kept his "mood calm and stable." (R. at 1640, 1655.) Dr. Heavens further noted that medication was helping to alleviate Plaintiff's social anxiety. (R. at 1632.)

Notably, there are records from Dr. Heavens indicating that a CT of Plaintiff's brain showed age inappropriate volume loss (R. at 1649), that Plaintiff experienced a panic attack at Planet Fitness (R. at 1744), and that Plaintiff was complaining of anxiety, stress, frustration, and trouble sleeping (R. at 1646, 1648, 1740, 1742). However, substantial evidence shows that Plaintiff's memory loss, PTSD, and anxiety were not severely

disabling. Therefore, the ALJ did not err in rejecting Dr. Heavens's opinions for inconsistency with the record.

### 2. Greg Mucklow and Jami Cline

Cline, PMHNP, treated Plaintiff from October 2015[2] through April 2016, providing Plaintiff with medication and counseling. (R. at 1976.) Cline diagnosed Plaintiff with generalized anxiety disorder, PTSD, mild neurocognitive disorder, and other substance induced disorder. (R. at 1976.) Due to these diagnoses, Cline opined that Plaintiff could not "engage in big crowded groups" or sustain a job, and experienced "persistent or generalized anxiety, difficulty thinking or concentrating, poor memory, anhedonia, pervasive loss of interest, social withdrawal or isolation and decreased [] sleep." (R. at 1976, 1978.)

Mucklow, LMHP, treated Plaintiff from May 3, 2012 through December 2012. (R. at 1459.) Mucklow diagnosed Plaintiff with chronic PTSD, alcohol dependence-agonist therapy, and opioid abuse. (R. at 674.) He listed signs and symptoms to support his treatment, including depressed mood, feelings of guilt or worthlessness, difficulty thinking or concentrating, flight of ideas, intrusive recollections of a traumatic experience, vigilance and scanning, decreased energy, impulsive or damaging behavior, and insomnia. (R. at 1460.)

The ALJ gave no weight to medical source statements made by Mucklow and Cline for three reasons. First, the ALJ determined that Mucklow and Cline are not considered "acceptable medical sources" per the Federal Code of Regulations. (R. at 29.) Second, the ALJ found Mucklow and Cline's opinions unpersuasive because they both opined about Plaintiff's status in 2009 though they did not start treating him until 2012 and 2015, respectively. (R. at 30.) Third, the ALJ concluded that it was unclear from the record whether Mucklow and Cline knew that Plaintiff was working part-time as a greeter, caring for his mother, or attempting to start his own business. (R. at 30.) The ALJ provided at

---

[2] Cline listed October 2016 as the date of first treatment, but the Court agrees with Plaintiff that Cline likely began treating Plaintiff in October 2015 and that this was a typographical error.

- 11 -

least one germane reason for rejecting Mucklow and Cline's opinions and it is supported by substantial evidence. Therefore, the ALJ did not err.

Plaintiff correctly points out that, at the time Plaintiff filed his claim, nurse practitioners fell under the definition of "other sources." 20 C.F.R. § 404.1513(d)(1) (2014) (Pl. Br. at 18). Generally, an ALJ "must provide specific, legitimate reasons based on substantial evidence in the record" in order to justifiably reject the opinion of a "medically acceptable treating source." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). However, an ALJ "may discount testimony from 'other sources' if the ALJ gives reasons germane to each witness for doing so." *Id.* (citations omitted). Therefore, although Mucklow and Cline are not medical sources, the ALJ cannot reject their opinions without providing at least one germane reason for doing so. *Frost v. Berryhill*, 727 Fed.Appx. 291, 294 (9th Cir. 2018) (finding that an ALJ's error in discounting a practitioner's opinion was harmless because the ALJ cited at least one germane reason.)

The ALJ's second reason for rejecting their opinions—that their opinions were incongruent with the medical evidence—is germane and supported by substantial evidence. "[T]he ALJ may permissibly reject check-off reports that do not contain any explanation of the bases of their conclusions." *Molina*, 674 F.3d at 1111 (internal quotations and citations omitted). Both Mucklow and Cline's questionnaires were comprised of check boxes and short opinions with limited explanations and no citations to treatment records. Further, the record as a whole contains only one medical record from each practitioner.

One record from Mucklow, dated May 3, 2012, includes his opinion that the ideal level of care for Plaintiff would be to attend individual counseling sessions with a dually licensed clinician to focus on his dual diagnosis issues of PTSD and substance dependence. (R. at 669–79.) Mucklow appears to have based his opinions on Plaintiff's statements alone. Therefore, the ALJ is correct that Mucklow's opinions that he made in 2012 regarding Plaintiff's mental status in 2009 are unpersuasive because they are not backed by treatment records from Mucklow that support Plaintiff's alleged limitations.

1 | Similarly, the overall record contains only one medical record from Cline, dated October 27, 2016. (R. at 1972–74.) Cline opined that Plaintiff "will demonstrate [an] improved quality of life by ensuring that he maintains his interpersonal relationships" and "complet[ing] activities of daily living." (R. at 1973.) From Cline's record, it appears Plaintiff reported that he is afraid of "rude people" and "being startled" and he "doesn't like crowds" and "cries uncontrollably at times." (R. at 1972.) However, it is not apparent from Cline's treatment record or questionnaire how she determined that Plaintiff's limitations date back to 2009. Moreover, the October 2016 record does not suggest that any of Plaintiff's diagnoses limit him in the ways Cline opined to in the questionnaire.

Plaintiff argues that "the ALJ may not substitute his lay opinion for that of the medical professionals who treated and examined [Plaintiff], particularly in this instance because their opinions are supported by the medical evidence in the record." (Pl. Br. at 19.) However, the ALJ is not seeking to do that, but instead is rejecting Mucklow and Cline's opinions because they failed to substantiate them with objective medical evidence, and Plaintiff has not made the Court aware of any records.

In sum, the ALJ properly rejected Mucklow and Cline's opinions regarding Plaintiff's mental limitations.

Plaintiff also argues that the ALJ failed to present a complete hypothetical question to the vocational expert because he failed to incorporate the limitations opined to by Plaintiff's treating physician and mental health practitioners. (Pl. Br. at 19.) However, because the Court finds that the ALJ did not err in rejecting the opinions of Dr. Heavens, Mucklow, and Cline, the Court need not examine the other grounds for reversal raised by Plaintiff.

**IT IS THEREFORE ORDERED** affirming the September 29, 2017 decision of the ALJ (R. at 17–32), as upheld by the Appeals Council on July 20, 2018 (R. at 1–6).

//

//

//

- 13 -

**IT IS FURTHER ORDERED** directing the Clerk to enter final judgment consistent with this Order and close this case.

Dated this 14th day of November, 2019.

Douglas L. Rayes
United States District Judge